IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**LATONYA T. BANKHEAD** and
**JUSTIN HALL** on behalf of themselves
and all others similarly situated,

  Plaintiffs,

v.

**FIRST ADVANTAGE
BACKGROUND SERVICES CORP.,**

  Defendant.

Case No. 1:17-cv-02910-LMM-CCB

_____

**PLAINTIFFS' MOTION AND MEMORANDUM FOR
PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT
AND MEMORANDUM IN SUPPORT**

13352119v2

## **TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................... 1

II. BACKGROUND ..................................................................................... 1

    A. The Parties Engaged in Litigation, Informal Discovery, and Mediation
       Before Reaching This Settlement ................................................... 1

        1.  Summary of Settled Claims .................................................. 1

        2.  Litigation History ................................................................ 2

    B. The Parties' Settlement Agreement ............................................... 4

        1.  The Settlement Class ........................................................... 4

        2.  Monetary and Injunctive Relief .......................................... 4

        3.  Form of Notice to Settlement Class Members ..................... 7

        4.  Opt-Out Right ..................................................................... 8

        5.  Right to Object .................................................................... 8

        6.  Attorneys' Fees, Expenses, and Service Award ................. 8

III. ARGUMENT ......................................................................................... 9

    A. Notice Should Be Sent to the Settlement Class ............................. 9

        1.  The Settlement Is the Product of Serious, Informed, Non-
           Collusive Negotiations ...................................................... 11

        2.  The Settlement Has No Deficiencies and Treats Class Members
           Equitably Relative to Each Other ...................................... 12

        3.  The Settlement Falls Well Within The Range of Approval ... 13

    B. Certification of the Settlement Class is Appropriate .................... 16

        1.  The Prerequisites of Rule 23(a) Are Met .......................... 16

ii

a. The Proposed Settlement Class Meets the Numerosity Requirement .................................................................. 16

b. The Class Shares Common Questions of Law and Fact ............ 17

c. The Named Plaintiffs' Claims Are Typical ........................... 18

d. The Class Representative's Interests are Aligned with hose of the Settlement Class, and the Class Representative Will Vigorously Represent the Class Through Qualified Counsel ............................................................................. 18

2. The Prerequisites of Rule 23(b) Are Met ............................... 19

a. Common Questions of Law or Fact Predominate ................... 19

b. A Class Action Is the Superior Vehicle for Adjudication .......... 20

IV. CONCLUSION ............................................................................ 21

## TABLE OF AUTHORITIES

<u>Cases</u>

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) .................................................................... 16, 19, 20

*Ashby v. Farmers Ins. Co. of Oregon*,
    592 F. Supp. 2d 1307 (D. Or. 2008) .................................................... 14

*Chakejian v. Equifax Info. Servcs. LLC*,
    256 F.R.D. 492 (E.D. Pa. 2009) .......................................................... 20

*In re Checking Account Overdraft Litigation*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) ............................................ 9, 13

*In re Chicken Antitrust Litig. Am. Poultry*,
    669 F.2d 228 (5th Cir. 1982) ................................................................. 9

*In re CP Ships Ltd. Sec. Litig.*,
    578 F.3d 1306 (11th Cir. 2009) ........................................................... 10

*Dalton v. Capital Associated Indus.*,
    257 F.3d 409 (4th Cir. 2001) ............................................................... 14

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ................................................................ 14

*Dickens v. GC Servs. Ltd. P'ship*,
    706 F. App'x 529 (11th Cir. 2017) ...................................................... 20

*In re Farmers Ins. Co., Inc., FCRA Litig.*,
    741 F. Supp. 2d 1211 (W.D. Okla. 2010) .......................................... 14

*Faught v. American Home Shield Corp.*,
    668 F.3d 1233 (11th Cir. 2011) ........................................................... 10

13352119v2

*Goldberger v. Integrated Res., Inc.,*
209 F.3d 43 (2d Cir. 2000) .................................................... 14

*Hamilton v. DirecTV, Inc.,*
642 F. Supp. 2d 1304 (M.D. Ala. 2009) ................................ 15

*Hawkins v. S2Verify,*
No. C 15-03502, 2016 WL 3999458 (N.D. Cal. July 26, 2016) ........ 17

*Massey v. On-Site Manager, Inc.,*
285 F.R.D. 239 (E.D.N.Y. 2012) ........................................... 17

*Murray v. GMAC Mortg. Corp.,*
434 F.3d 948 (7th Cir. 2006) ................................................ 20

*Nelson v. Mead Johnson & Johnson Co.,*
484 Fed. Appx. 429 (11th Cir. 2012) .................................... 9

*In re Nissan Motor Corp. Antitrust Litigation,*
552 F.2d 1088 (5th Cir. 1977) .............................................. 9

*Roundtree v. Bush Ross, P.A.,*
304 F.R.D. 644 (M.D. Fla. 2015) .......................................... 17

*Singleton v. Domino's Pizza, LLC,*
976 F. Supp. 2d 665 (D. Md. 2013) ....................................... 21

*White v. E-Loan, Inc.,*
No. C05-02080SI, 2006 WL 2411420 (N.D. Cal. Aug. 18, 2006) ........ 21

*Williams v. Mohawk Indus., Inc.,*
568 F.3d 1350 (11th Cir. 2009) ............................................ 18

Rules & Statutes

15 U.S.C. § 1681, *et seq.* ....................................................... *passim*

28 U.S.C. § 1715 ..................................................................... 7

v

Fed. R. Civ. P. 23, *et seq.*.................................................................................*passim*

vi

# I.  INTRODUCTION

Plaintiffs Latonya T. Bankhead and Justin Hall ("Plaintiffs"), individually and on behalf of the Settlement Class,[1] seek preliminary approval of the proposed Settlement Agreement with Defendant First Advantage Background Services Corp. ("Defendant" or "First Advantage") which resolves this putative class action brought under the Fair Credit Reporting Act ("FCRA").  The Settlement Agreement between Plaintiffs and Defendant (collectively, the "parties"), if approved, will resolve all claims of Plaintiffs and all members of the Settlement Class in exchange for Defendant's agreement to pay $1,975,000 into a common Settlement Fund, and to implement procedures to address various issues raised in Plaintiffs' Complaint.  The proposed settlement of this action follows extensive arms-length negotiations by experienced and informed counsel.  This settlement represents a substantial recovery for the Settlement Class.  Its terms are "fair, reasonable, and adequate" and it warrants preliminary approval.  Fed. R. Civ. P. 23(e)(2).  First Advantage does not oppose the relief sought in this motion.

# II. BACKGROUND

## A. The Parties Engaged in Litigation, Discovery, and Mediation Before Reaching This Settlement

### 1.  Summary of Settled Claims

---

[1] Unless otherwise explicitly defined herein, all terms have the same meanings as those set forth in the Class Action Settlement Agreement and Release ("Settlement Agreement"), attached to the Declaration of E. Michelle Drake ("Drake Decl.") as Exhibit 1.

1

All of the settled claims relate to background checks that Defendant produced on applicants for employment or other similar engagements with third parties. As alleged in the Amended Complaint, the FCRA generally prohibits CRAs from including adverse information in a consumer report that is older than seven years from the date of the report. ("Am. Compl.", ECF No. 48, ¶ 12; *see also* 15 U.S.C. § 1681c.) This general restriction, however, does not apply to criminal conviction records, which may be reported indefinitely. (*Id.*) However, non-criminal conviction information, such as dismissed charges, may not be included in a consumer report if the information predates the report by more than seven years with certain exceptions. (*Id.*)

Plaintiffs allege that Defendant violated the FCRA by producing background reports that included information relating to dismissed charges that predated the report by more than seven years. (Am. Compl. ¶¶ 22-24.) Plaintiffs sought statutory damages of $100-$1000 for Defendant's alleged willful violations of the FCRA. (Am. Compl. ¶ 59.).

### 2. Litigation History

Prior to reaching the Settlement Agreement in this matter, the parties engaged in substantial litigation. On June 22, 2017, Plaintiff filed a Class Action Complaint against Defendant in the Superior Court of Fulton County. (*See* ECF No. 1-1.) On behalf of herself and the proposed classes, Plaintiff sought statutory damages, plus attorneys' fees, costs, injunctive relief, and all other available relief. (*See* Compl.) Defendant removed the action to this Court on August 2, 2017, and filed a Motion to Dismiss Plaintiff's Class Claim and/or Strike Plaintiff's Class Allegations on August 9, 2017. (ECF Nos. 1, 3.) Magistrate Judge Fuller

recommended denying Defendant's motion (ECF No. 15) and the District Court adopted Magistrate Judge Fuller's Report and Recommendation.  (ECF No. 17.)

After the motion was denied, the parties engaged in substantial discovery with both sides responding to document requests and interrogatories.  The parties also engaged in numerous lengthy meet and confers to crystalize litigation positions and any discovery disputes. (Drake Decl. ¶ 3).  Plaintiff deposed Charlie Oyler regarding Defendant's technical systems, and reviewed counts and other exported data from Defendant's database.

After sufficient discovery had occurred, on December 12, 2018, the parties engaged in an adversarial day-long mediation in Atlanta, Georgia with experienced third-party neutral Nancy Lesser of Pax ADR LLC.  The parties did not reach resolution at the December 12, 2018 mediation, and Plaintiffs' took the deposition of another one of Defendant's corporate representatives on December 17, 2018.

During the course of the litigation, Plaintiff Hall retained the undersigned counsel to join the lawsuit as a Named Plaintiff and Class Representative.  Plaintiff Hall's documents were presented during depositions, Plaintiff Hall was involved in the settlement negotiations and has approved the settlement agreement.  (Drake Decl. ¶ 4).  Had the case not settled, Plaintiff Hall was fully prepared to participate in an adversarial litigation.

With the continued assistance of the mediator, the parties subsequently engaged in additional arm's length negotiations in the days and weeks after the mediation, eventually executing a terms sheet and formalizing a class-wide

settlement.  (*Id.* ¶ 3.)  Plaintiffs also filed an Amended Complaint to add Plaintiff Justin Hall as a class representative.  (ECF No. 48.)

Plaintiffs now bring that settlement before the Court with this Motion.

**B.  The Parties' Settlement Agreement**

**1.  The Settlement Class**

To avoid the further costs and burdens of litigation, the parties have agreed to settle the claims and resolve this matter in its entirety.  The proposed Settlement Class consists of the approximately 24,943 persons upon whom Defendant produced one or more reports which included one or more records older than seven years which included a term listed in Exhibit A to the Settlement Agreement, in the disposition field from June 23, 2015 through January 27, 2019.  (Drake Decl., Ex. 1 ¶ 1.9.)  As part of the Settlement Agreement, the Settlement Class Members will release all claims arising under 15 U.S.C. § 1681c of the FCRA and any analogous state law claims.  (Drake Decl., Ex. 1 ¶ 9.1.)

**2.  Monetary and Injunctive Relief**

In connection with the settlement of the litigation, Defendant will create a Settlement Fund for class members consisting of $1,975,000.  (Drake Decl., Ex. 1 ¶¶ 1.21, 1.33.)   After Court-approved deductions for attorneys' fees and costs, settlement administration costs, and a service award for the Named Plaintiffs, the entire remaining balance of the Net Settlement Amount will be allocated *pro rata* to Class Members who are entitled to receive a payment.  (*Id.* ¶ 8.5.)  Participating Class Members fall into two categories for payment purposes.  The first category is where Plaintiffs conclude that the disposition represents a non-conviction ("referred to in the Settlement as "Class Members Entitled to Autopay").  (*Id.* ¶

4

1.10). These Class Members will be sent a check automatically without having to submit a claim form. There are 20,628 Class Members Entitled to Autopay.

The other category of Class Members is those persons for whom Plaintiffs do not have sufficient information to conclude whether the disposition in Defendant's records was a likely to have been in most instances a non-conviction. Thus, these individuals will be required to return a claim form affirming that their consumer report contained non-conviction information older than seven years to receive a check. Class Members who are required to submit a claim to recover may request a copy of the First Advantage report to determine precisely what was reported. (*Id.* ¶ 7.2.)

All Class Members who receive a check will receive the same amount, regardless of their payment category.

Defendant has also agreed to various process changes to ameliorate the occurrence of the alleged violations that are the subject of this lawsuit. First, within six months of the Effective Date of the Settlement, Defendant shall have conducted training sessions with its employees who prepare employment-purposed consumer reports to reinforce their education regarding compliance with 15 U.S.C. § 1681c. (*Id.* ¶ 5.1.) Also within six months of the Effective Date of the Settlement, Defendant shall have audited its obsolescence filters to flag dispositions that are in all instances non-convictions and antedate reports by more than seven years, and, unless permitted by the FCRA, will endeavor to omit them from future employment-purposed consumer reports. (*Id.* ¶ 5.2). Lastly, within six months of the Effective Date of the Settlement, Defendant shall have taken measures to apply its obsolescence filters to a certain category of reports called "non-channeler FBI

Reconciliation Reports" to prevent the reporting of dispositions that are in all instances non-conviction that antedate the report by more than seven years, unless permitted by the FCRA. (*Id.* ¶ 5.3.) "Non-channeler FBI Reconciliation Reports" are when one of Defendant's clients procures a background check directly from the FBI and assigns Defendant to confirm the information therein. Defendant had not previously applied its obsolescence filters to these types of reports because Defendant maintains that those reports are not subject to the FCRA and because they only referenced records that had already previously been disclosed to the client by the FBI, and that the client had already thereafter disclosed to Defendant.

If any settlement checks are not negotiated by Class Members, remaining amounts will be redistributed pro-rata to Class Members who cashed their initial checks, less the administrative expense of any such redistribution. Such redistribution will occur unless the total amount remaining for redistribution is less than $15,000. Any amounts remaining at that time shall escheat to the state. (*Id.* ¶ 8.8.) No portion of the Gross Settlement Amount will revert to Defendant in any circumstance. (*Id.* ¶ 3.1.)

After soliciting bids from four different settlement administrators, the parties have jointly selected JND, an independent third party, to serve as the settlement administrator in this case. The settlement administrator will undertake mailing and emailing notice to Class Members, mailing of settlement payments, and other administrative tasks. All fees and expenses charged by the administrator will be deducted from the Gross Settlement Amount, pursuant to Court approval. (Drake Decl., Ex. 1 ¶ 8.2.) Class Counsel negotiated a not-to-

6

exceed cap with JND so that the costs of administration through the initial distribution will not to exceed $63,000.

### 3. Form of Notice to Settlement Class Members

The parties have agreed to a notice procedure which provides for notice to be sent via First Class Mail, and to be posted on a settlement website. (*Id.* ¶¶ 1.26, 1.31, 6.2, 6.4, 6.6.) Notice will be sent via email and/or First Class Mail to the last known mailing address for that Class Member, as updated by the settlement administrator. (*Id.* ¶6.6) Class members who are not entitled to Autopay will receive a Reminder Notice via both email and U.S. Mail at least 14 days prior to the claims deadline. (*Id.* ¶ 6.7). In addition to sending the mail notices, the administrator will also establish a settlement website, where the Complaint, long form notice, Settlement Agreement and other settlement-related documents will be posted. (*Id.* ¶ 6.4.)

The proposed long form mail notice, postcard notices, and reminder notices are attached to the Settlement Agreement as Exhibits C-F. Defendant, through the settlement administrator, will also comply with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), by providing notice of this proposed settlement to appropriate officials. (Drake Decl., Ex. 1 ¶ 6.3.)

These extensive efforts to provide notice to the Settlement Class are "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). This notice program meets the requirements of Fed. R. Civ. P. 23, and should be approved.

### 4. Opt-Out Right

The parties propose that the Settlement Class be certified pursuant to Fed. R. Civ. P. 23(b)(3). Settlement Class Members may send opt-out requests to the address contained in the notice, and the settlement administrator will maintain that address. (Drake Decl., Ex. 1 ¶¶ 1.36, 7.3.1.) The deadline for Class Members to postmark any opt-out of the settlement will be 60 days after the date on which notices are initially e-mailed to Class Members. (*Id.*)

### 5. Right to Object

Class Members who wish to object to the Settlement Agreement may mail their objection to the settlement administrator no later than the objections deadline, 60 days after the date on which the initial notices are e-mailed. (*Id.* ¶¶ 1.27, 7.4.1.) Settlement Class Members who fail to make objections in the manner specified in the Settlement Agreement shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement. (*Id.*)

### 6. Attorneys' Fees, Expenses, and Service Award

The Settlement Agreement provides that Plaintiffs' Counsel's fees and service awards for the Named Plaintiffs are to be deducted from the Gross Settlement Amount, subject to Court approval. (*Id.* ¶¶ 8.3, 8.4.) Counsel will petition the Court for attorneys' fees not to exceed one-third of the Gross Settlement Amount, as well as documented, customary expenses not to exceed $32,000, and a service award of up to $3,500 each for Plaintiffs Hall and Bankhead. (*Id.*) Plaintiffs' Counsel will formally make this request forty-four (44) days after the Initial Notice Mailing, so that the papers are available to class members prior

to the deadline for opt-outs and objections. (*Id.* ¶10.3.) Neither settlement approval nor the size of the Gross Settlement Amount are contingent upon the full amount of any requested fees or class representative service award being approved. (*Id.* ¶¶ 8.3.1, 8.4.1.)

## III.   ARGUMENT

### A. Notice Should Be Sent to the Settlement Class

A court may approve a settlement if the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). *See Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. Appx. 429, 434 (11th Cir. 2012). It is well-established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *See In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011), (quoting *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982)) (Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement"). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *Checking Account Overdraft*, 830 F. Supp. 2d at 1341, (*quoting In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1105 (5th Cir. 1977)). These considerations apply here. For the reasons set forth below, the Court should grant preliminary approval of the settlement, and authorize the issuance of notice to the Settlement Class.

Per the recent amendment to Fed. R. Civ. P. 23, in determining whether notice should be sent to the Settlement Class, the Court should consider:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3);[2] and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These factors are not mean to "displace any factor" previously articulated in the case law, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23 adv. comm. nn. (2018). The Eleventh Circuit has articulated the following factors for consideration: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, length and expense of further litigation; (5) opposition to the settlement; and, (6) the stage of the proceedings at the time of settlement. *See Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011), (citing *In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1315 (11th Cir. 2009)).

---

[2] There are no such agreements here.

Here, the settlement is fair, reasonable, and adequate and notice should be directed to the Settlement Class.

### 1. The Settlement Is the Product of Serious, Informed, Non-Collusive Negotiations

As recounted above, the settlement in this case was the result of arms-length negotiations facilitated by an experienced and well-respected mediator after substantial pre-mediation discovery. The settlement here was reached after substantial formal discovery including document productions and depositions. Further, the parties engaged an all-day mediation with a third party neutral. Notably, no terms relating to attorneys' fees or class representative service awards were negotiated until all other material terms of the Settlement were agreed upon. (Drake Decl. ¶ 3.)

Plaintiffs' Counsel is highly experienced in complex class action litigation and consumer litigation in general. (*See* Drake Decl. ¶¶ 5-14 & Ex. 2.) Berger Montague, PC (Berger Montague) was founded in 1970, and has been concentrated on representing plaintiffs in complex class actions ever since. (*Id.*) The firm has been recognized by courts for its skill and experience in handling major complex litigation. (*Id.*) Berger Montague has been recognized by The National Law Journal in 11 of the last 15 years for its "Hot List" of top plaintiffs' oriented litigation firms in the nation. (*Id.*) Lead counsel from Berger, E. Michelle Drake, has worked extensively on FCRA class actions. (*Id.*) John Albanese, also from Berger, has concentrated his practice on FCRA litigation as well, and is counsel of record in many active FCRA cases throughout the country. (*Id.*)

Likewise, Plaintiffs Hall and Bankhead have adequately represented the class in this case.  They have provided assistance to Plaintiffs' counsel, have stayed informed regarding developments in the case, and both Plaintiffs have reviewed and approved the Settlement.  (Drake Decl. ¶ 4.)

### 2. The Settlement Has No Deficiencies and Treats Class Members Equitably Relative to Each Other

This settlement achieves an excellent recovery for the Settlement Class and contains none of the deficiencies which can stand in the way of judicial approval. All deductions from the Settlement Fund, such as attorneys' fees, settlement administration expenses, and Named Plaintiff service awards require judicial approval, and the settlement is not contingent upon approval of the requested amounts.  The totality of the Settlement Fund will be paid out, and there is no reversion of any funds to the Defendant.  Class Members and other consumers will also receive the non-monetary benefit of Defendant's process changes.

Preferential treatment is not a concern in this case.  The settlement calls for the certification of a single class.  Every participating Class Member will be treated equally and have an equal opportunity to share in the Settlement Fund.  When the Fund is paid out, all Class Members will receive checks for the same amount.

The settlement does make a distinction between Class Members, in that some Class Members are entitled to autopay, and some must submit a simple claim form to receive a settlement payment.  This, however, is not preferential treatment, but the most rational way to fairly administer the Fund.  There are Class Members for which the parties require more information to determine whether a particular disposition was in each particular instance a non-conviction.  Providing

12

these Class members with an opportunity to review their report and certify that they contend the dispositions were not convictions is a rational, fair, and appropriate method to determine whether certain Class members are entitled to payment.

The settlement also calls for a modest, $3,500 service awards for the Named Plaintiffs, but that requested award is subject to the Court's review and approval. Furthermore, service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable.  *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1357 (S.D. Fla. 2011) ("There is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action.") (internal quotation marks omitted).

### 3.  The Settlement Falls Well Within The Range of Approval

The settlement in this case is impressive when considering the range of possible recoveries for the Settlement Class, the number of procedural and merits-based hurdles between Plaintiffs and a final judgment, the significant uncertainties of a final judgment for Plaintiffs, and Defendant's intent to vigorously defend on the merits of the case.

In light of these factors, the proposed settlement amount is substantial. Plaintiffs filed this case seeking statutory damages under the FCRA, which provides for between $100 and $1000 for each willful violation.  15 U.S.C. § 1681n(a)(1).  The FCRA itself does not provide any guidance to courts in choosing the appropriate recovery for a statutory violation, *see* 15 U.S.C. § 1681n(a)(1), but in determining the amount of statutory damages to impose pursuant to the FCRA, courts have looked to "the importance, and hence the value, of the rights and

13

protections" at issue in the case. *Ashby v. Farmers Ins. Co. of Oregon*, 592 F. Supp. 2d 1307, 1318 (D. Or. 2008); *In re Farmers Ins. Co., Inc., FCRA Litig.*, 741 F. Supp. 2d 1211, 1224 (W.D. Okla. 2010). The monetary recovery of between $56 and $58 per participating class member,[3] is a substantial percentage of the likely award if this case had proceeded all the way through a final judgment in Plaintiffs' favor, and is an excellent recovery for the Settlement Class. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n. 2 (2d Cir. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery") *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

It also compares favorably with other, similar settlements involving similar claims. *See, e.g. King v. General Info. Servs.*, No. 10-cv-6850, ECF No. 124 (E.D. Pa. Nov. 4, 2014) (approving §1681c settlement that provides class members $50); *Haley v. TalentWise, Inc.*, No. 2:13-cv-01915-MJP, ECF No. 88 (final approval of settlement which pays class members approximately $50 for claims based on reporting outdated charges).

In addition to the generalized uncertainty surrounding all litigation, Plaintiffs in this case faced the specific risk of being able to demonstrate that Defendant's alleged conduct was "willful" under the FCRA. The FCRA is not a strict liability statute. *Dalton v. Capital Associated Indus.*, 257 F.3d 409, 417 (4th Cir.

---

[3] This estimate assumes that the Court grant's Plaintiffs' requests for attorney's fees, costs and award for the Named Plaintiffs, and reflects a range of potential recoveries based upon the number of claim forms which are likely to be returned, namely assuming a claims rate of between 5% and 20%. The actual recovery per participating Class Member will depend on the Court's ruling on the requested fees, costs and awards, as well as the actual number of claim forms submitted.

14

2001).   A FCRA plaintiff can recover only where the defendant has acted negligently or willfully.  But where the defendant's violation was only negligent, recovery is limited to actual damages.  *See* 15 U.S.C. §§ 1681n(a)(1), 1681o(a)(1).  To be entitled to statutory, Plaintiff would have had to prove not only that Defendant violated the FCRA, but that it did so willfully.  Defendant has raised multiple defenses to willfulness, including that its "non-channeler FBI reports" were not regulated by the FCRA.

Moreover, the non-monetary relief here, which will help ensure that Defendant does not report non-convictions older than seven years in the future, represents a substantial accomplishment.  Defendant is one of the country's largest background check companies, and the process changes will help Settlement Class Members and all other consumers who are the subjects of Defendant's background checks.  Given that there is a disagreement about injunctive relief being available to private plaintiffs under the FCRA, this accomplishment is meaningful.  *See Hamilton v. DirecTV, Inc.,* 642 F. Supp. 2d 1304, 1305 (M.D. Ala. 2009) ("District courts in the Eleventh Circuit have consistently held that equitable relief is not available to private citizens under the FCRA.")

Viewed in the context of the significant litigation risks faced, Defendant's defenses and anticipated motion practice, as well as the substantial delay and costs that Settlement Class Members would have experienced in order to receive proceeds from an adversarial-obtained judgment, not to mention the judicial resources required, this settlement is in the best interests of the Named Plaintiffs and the Settlement Class Members, and should be approved.

**B. Certification Of The Settlement Class Is Appropriate.**

The parties request that the Court certify the following Settlement Class under Fed. R. Civ. P. 23 for settlement purposes only:

> All natural persons upon whom Defendant produced one or more reports which included one or more records older than seven years which included a term listed in Exhibit A to the Settlement Agreement in the disposition field from June 23, 2015 through January 27, 2019.

Even a class certified for settlement purposes only must satisfy the requirements for class certification pursuant to Rule 23, though the court "need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The proposed Settlement Class here meets the prerequisites for certification under Rule 23(a) and 23(b)(3).

**1. The Prerequisites of Rule 23(a) Are Met**

Under Fed. R. Civ. P. 23(a), a class may be certified only when (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. The proposed Settlement Class meets these requirements.

**a. The Proposed Settlement Class Meets the Numerosity Requirement**

Fed. R. Civ. P. 23(a)(1) requires a proposed class be "so numerous that joinder of all members is impracticable." In this case, where the Settlement Class

13352119v2

consists of nearly 25,000 people, there is no question that joinder would be impracticable, and that the numerosity requirement is met.

b.  The Class Shares Common Questions of Law and Fact

A proposed class satisfies the "commonality" requirement "if there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). It is not necessary that all issues be common to the class, but rather only that there be at least one common issue. *Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644, 659 (M.D. Fla. 2015). Commonality has been found in similar cases in which it was alleged a consumer reporting agency reported outdated adverse information in violation of 15 U.S.C. § 1681c. *Hawkins v. S2Verify*, No. C 15-03502, 2016 WL 3999458, at *3 (N.D. Cal. July 26, 2016) (finding commonality, certifying class based on claim of reporting of outdated non-criminal information); *Massey v. On-Site Manager, Inc.*, 285 F.R.D. 239, 244 (E.D.N.Y. 2012) (finding commonality, certifying class, in case where consumer reporting agency reported outdated information on class members' reports); *King v. General Info. Servs.*, No. 10-cv-6850, ECF No. 124 (E.D. Pa. Nov. 4, 2014) (certifying §1681c settlement class); *Haley v. TalentWise, Inc.*, No. 2:13-cv-01915-MJP (same).

Here, there are common issues of law and fact with respect to the Settlement Class, which would be determinative of the claims at issue, that are based on Defendant's common procedures. The common determinative question here is whether Defendant's process and policy of reporting certain offenses and violations was allegedly improper. Further, Defendant's alleged willfulness would also be a common legal question. *Massey*, 285 F.R.D. at 245 ("the central issues of whether defendant issued reports containing obsolete information about

17

members of the class and whether it did so willfully can be proved on a generalized basis through records and testimony from defendant").

Accordingly, the commonality requirement is satisfied.

### c. The Named Plaintiffs' Claims Are Typical

"The claim of a class representative is typical if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009) (internal quotation marks omitted). "The typicality requirement may be satisfied despite substantial factual differences when there is a strong similarity of legal theories." *Id.* (internal quotation marks and modifications omitted).

In this case, Plaintiffs' claims are the same as the claims of every other class member, and are based upon the same legal theory. As alleged, Plaintiffs, like every member of the Settlement Class, had a background report produced on them by Defendant which allegedly included a non-conviction disposition older than seven years from the date of the report. Typicality is satisfied.

### d. The Class Representative's Interests Are Aligned with Those of the Settlement Class, and the Class Representative Will Vigorously Represent the Class Through Qualified Counsel

Pursuant to Rule 23(a)(4) and as described above, Plaintiffs Bankhead and Hall's counsel will fairly and adequately protect the interests of the Class. They have vigorously pursued the claims in the case, and have no conflicts with any other Class Members. Further, proposed Class Counsel is adequate. As described

18

above, E. Michelle Drake, John Albanese and the firm Berger Montague PC are highly experienced in class litigation, and in FCRA litigation in particular.

In sum, the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a)(1)–(4) are met here.

### 2. The Prerequisites of Rule 23(b) Are Met

The Settlement Class Members' claims also meet the predominance and superiority prerequisites of Fed. R. Civ. P. 23(b)(3).  In evaluating this prong, the court may consider class members' interests in prosecuting their claims individually, the extent and nature of litigation thus far, and the desirability of concentrating the litigation in the particular forum.  Fed. R. Civ. P. 23(b)(3)(A)–(C).  In the context of a classwide settlement, the court need not consider whether the case, if tried, would present difficult management problems.  *Amchem*, 521 U.S. at 620.  The applicable requirements are met in this case.

### a. Common Questions of Law or Fact Predominate

When considering predominance, the core issue is "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.

In this case, classwide issues predominate over any individual concerns. Common issues predominate for Class Members in that Defendant allegedly reported a non-conviction disposition on their background report that was older than seven years from the date of the report.  Further, issues such as the sufficiency of Defendant's procedures and willfulness of any alleged violation can be determined on a classwide basis.  The predominance requirement is therefore met.

19

Second, the alleged willfulness of Defendant's alleged violations presents a critical common question.  The ability of Class Members to obtain statutory damages is contingent upon a finding that Defendant's violations were willful.  15 U.S.C. § 1681n(a)(1).  Because Defendant's alleged actions affected every member of the Settlement Class, the answer to the question of whether Defendant's violations were willful can be determined on a class-wide basis.  *Chakejian v. Equifax Info. Servcs. LLC*, 256 F.R.D. 492, 500 (E.D. Pa. 2009) ("Thus, the inquiry is to [defendant's] state of mind in implementing its policies and procedures, not on the customer's particular interaction with the CRA…. To prove willfulness here, a consumer-by-consumer inquiry is not necessary.").

Third, if this case were litigated, the amount of damages could also be determined on a classwide basis.  Because Plaintiffs sought statutory and punitive damages, no individual analysis of damages would be required.  *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952-53 (7th Cir. 2006).  Thus, the predominance requirement is met.

### b.  A Class Action Is the Superior Vehicle for Adjudication

To be certified, a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Again, in the settlement context, the court need not address the manageability requirements of Rule 23(b)(3)(D).  *Amchem*, 521 U.S. at 620.  "Proper superiority analysis considers 'the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'"  *Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 537 (11th Cir. 2017).

13352119v2

In a matter such as this, where the claims of all Class Members are sufficiently similar and are based on a sufficiently similar common core of facts, it is clear that adjudicating this matter as a class action will achieve economies of time, effort, and expense, and promote uniformity of results.  *See White v. E-Loan, Inc.*, No. C05-02080SI, 2006 WL 2411420, at *9 (N.D. Cal. Aug. 18, 2006) ("[W]ithout class actions, there is unlikely to be any meaningful enforcement of the FCRA by consumers whose rights have been violated."); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 677 (D. Md. 2013) (finding class action superior and certification for settlement purposes justified "particularly in light of the relatively modest amount of statutory damages available under the FCRA").

## IV.    CONCLUSION

Based on the foregoing, the Court should authorize notice be sent to the Settlement Class and enter the proposed preliminary approval order.

Respectfully submitted this 8th day of April, 2019.

/s/ E. Michelle Drake
E. Michelle Drake, SBN 229202
John G. Albanese (*pro hac vice*)
BERGER MONTAGUE PC
43 S.E. Main Street, Suite 505
Minneapolis, MN 55414
Tel.: 612.594.5999
Fax: 612.584.4470
Email: emdrake@bm.net
        jalbanese@bm.net

Gary B. Andrews, Jr., SBN 019375
Blake Andrews Law Firm, LLC
1831 Timothy Drive
Atlanta, GA 30329

21

Tel.: 770.828.6225
Email: blake@blakeandrewslaw.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

By her signature below, and as required by Local Rule 7.1.D., counsel for Plaintiff certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1.B, namely, Book Antiqua (13 point).

Dated this 8th day of April, 2019.

/s/ E. Michelle Drake
E. Michelle Drake

1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **LATONYA T. BANKHEAD** & **JUSTIN HALL** on behalf of themselves and all others similarly situated, | ) <br> ) <br> ) <br> ) |
| *Plaintiff,* | ) |
| v. | )    Case No. 1:17-cv-02910-LMM-CCB |
| | ) |
| **FIRST ADVANTAGE BACKGROUND SERVICES CORP.,** | ) <br> ) <br> ) |
| *Defendant.* | ) |

_____

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing document on all counsel of record by causing a copy of the same to be served via CM/ECF to:

Henry R. Chalmers
Edward P. Cadagin
ARNALL GOLDEN GREGORY LLP
henry.chalmers@agg.com
edward.cadagin@agg.com

Dated this 8th day of April, 2019.

/s/ E. Michelle Drake
E. Michelle Drake

2

13352119v2