IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **LATONYA T. BANKHEAD** and **JUSTIN HALL** on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>**FIRST ADVANTAGE BACKGROUND SERVICES CORP.**,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No. 1:17-cv-02910-LMM-CCB<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL AND MEMORANDUM IN SUPPORT

13722212v2

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ................................................................................. 1

II. BACKGROUND ................................................................................. 2

    A. The Parties Engaged in Litigation, Informal Discovery, and Mediation
       Before Reaching This Settlement ................................................... 2

        1.  Summary of Settled Claims and Litigation History ....................... 2

    B. The Parties' Settlement Agreement .............................................. 3

    C. Class Notice and Reaction ........................................................... 6

III. ARGUMENT ..................................................................................... 7

    A. Sufficient Notice Was Provided to The Class ............................... 7

    B. The Settlement Should be Finally Approved ................................. 8

        1.  The Relief Provided by The Settlement is Significant ................. 10

        2.  Plaintiffs and the Class Would have Faced Substantial Risks
           in the Absence of a Settlement ............................................... 11

        3.  The Stage of the Proceedings and Amount of Discovery
           Completed Supports Approval ................................................ 12

        4.  The Reaction of the Class has been Positive ............................. 13

        5.  The Requested Attorneys' Fees, Costs, and Class Representative
           Service Awards Should Be Approved ...................................... 14

IV. CONCLUSION ................................................................................. 14

13722212v2

# TABLE OF AUTHORITIES

<u>Cases</u>

*Ashby v. Farmers Ins. Co. of Oregon*,
    592 F. Supp. 2d 1307 (D. Or. 2008).....................................................................10

*In re Charles Schwab Corp. Secs. Litig.*,
    WL 1481424 (N.D. Cal. April 19, 2011) ...........................................................13

*In re Checking Account Overdraft Litigation*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011).................................................................8

*In re Chicken Antitrust Litig. Am. Poultry*,
    669 F.2d 228 (5th Cir. 1982) ................................................................................8

*In re CP Ships Ltd. Sec. Litig.*,
    578 F.3d 1306 (11th Cir. 2009) ...........................................................................9

*Dalton v. Capital Associated Indus.*,
    257 F.3d 409 (4th Cir. 2001) ..............................................................................12

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).................................................................................10

*In re Farmers Ins. Co., Inc., FCRA Litig.*,
    741 F. Supp. 2d 1211 (W.D. Okla. 2010)...........................................................10

*Faught v. American Home Shield Corp.*,
    668 F.3d 1233 (11th Cir. 2011) ...........................................................................9

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)...................................................................................10

*Hamilton v. DirecTV, Inc.*,
    642 F. Supp. 2d 1304 (M.D. Ala. 2009) ............................................................11

13722212v2

*Lee v. Ocwen Loan Servicing, LLC,*
    2015 WL 5449813 (S.D. Fla. Sept. 14, 2015) ........................................................ 8

*Mullane v. Cent. Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950) ........................................................................................... 7, 8

*Nelson v. Mead Johnson & Johnson Co.,*
    484 Fed. Appx. 429 (11th Cir. 2012) ................................................................... 8

*In re Nissan Motor Corp. Antitrust Litigation,*
    552 F.2d 1088 (5th Cir. 1977) .............................................................................. 8

*Perez v. Asurion Corp.,*
    501 F.Supp.2d 1360 (S.D.Fla.2007) ................................................................... 13

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) ............................................................................................... 8

*Saccoccio v. JP Morgan Chase Bank, N.A.,*
    297 F.R.D. 683 (S.D. Fla. 2014) ..................................................................... 1, 13

*Sullivan v. DB Invs., Inc.,*
    667 F.3d 273 (3d Cir.2011) ................................................................................. 14

## Rules & Statutes

15 U.S.C. § 1681, *et seq.* ............................................................................... *passim*

28 U.S.C. § 1715 ........................................................................................................ 7

Fed. R. Civ. P. 23, *et seq.* ......................................................................... *7, 8, 9*

## I.  INTRODUCTION

On April 30, 2019, the Court granted preliminary approval of the proposed settlement of this action.  (ECF No. 51.)  The Court found on a preliminary basis that the terms of the settlement are "fair, reasonable, and adequate."  (*Id*.)  The settlement provides meaningful injunctive relief which addresses and solves the alleged problems identified by this lawsuit.  In addition, the settlement provides monetary relief for class members which is comparable to that provided in settlements of similar claims.  The response from the Settlement Class Members confirms that the settlement is fair and should be approved – out of 23,465 Class Members, only one has opted out, none have objected, and as of July 10, out of the group of Class Members required to return a Claim Form to receive a payment, 613 (15.4%) have submitted valid claims.  This supports the conclusion that the settlement is fair, reasonable, and adequate.  See *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) ("a low number of objections suggests that the settlement is reasonable").

Accordingly, Plaintiffs Latonya T. Bankhead and Justin Hall ("Plaintiffs"), individually and on behalf of the Settlement Class, respectfully request that the Court enter the attached order (Ex. 1) granting final approval of the proposed Settlement Agreement with Defendant First Advantage Background Services Corp. ("Defendant" or "First Advantage") which fully resolves this class action brought under the Fair Credit Reporting Act ("FCRA").  First Advantage does not oppose the relief sought in this motion.

13722212v2

## II. BACKGROUND

### A. The Parties Engaged in Litigation, Discovery, and Mediation Before Reaching This Settlement

#### 1. Summary of Settled Claims and Litigation History

The substance and history of this class action is recounted in detail in Plaintiff's preliminary approval and fee petition papers and will be only briefly summarized here. (See ECF Nos. 49, 52.) All of the settled claims relate to background checks that Defendant produced on applicants for employment or other similar engagements with third parties. As alleged in the Amended Complaint, the FCRA generally prohibits CRAs from including adverse information in a consumer report that is older than seven years from the date of the report. ("Am. Compl.", ECF No. 48, ¶ 12; *see also* 15 U.S.C. § 1681c.) This general restriction, however, does not apply to records of criminal convictions, which may be reported indefinitely. (*Id.*)

Plaintiffs allege that Defendant violated the FCRA by producing background reports that included information relating to criminal charges that did not result in a conviction and which predated the report by more than seven years. (Am. Compl. ¶¶ 22-24.)

Prior to reaching the Settlement Agreement in this matter, the parties engaged in substantial litigation. On June 22, 2017, Plaintiff Bankhead filed a Class Action Complaint against Defendant in the Superior Court of Fulton County. (*See* ECF No. 1-1.) Defendant removed the action to this Court on August 2, 2017, and filed a Motion to Dismiss Plaintiff's Class Claim and/or Strike Plaintiff's Class Allegations on August 9, 2017, but that motion was denied. (ECF Nos. 1, 3, 15, 17.)

2

After the motion was denied, the parties engaged in substantial discovery with both sides responding to document requests and interrogatories, and with plaintiff conducting depositions and database discovery. (ECF No. 52-1¶ 3).

After sufficient discovery had occurred, the parties engaged in an adversarial day-long mediation with an experienced third-party neutral. This mediation did not result in settlement. The parties therefore engaged in further litigation and discovery. During the course of the litigation, Plaintiff Hall retained the undersigned counsel to join the lawsuit as a Named Plaintiff and Class Representative. Plaintiff Hall's documents were presented during depositions, he was involved in the settlement negotiations and he approved the settlement agreement. (ECF No. 52-1 ¶ 4). Had the case not settled, Plaintiff Hall would have continued to participate in the litigation.

With the continued assistance of the mediator, the parties continued to engage in additional arm's length negotiations in the days and weeks after the mediation, eventually executing a terms sheet and formalizing a class-wide settlement. (*Id.* ¶ 3.) Plaintiffs also filed an Amended Complaint to add Plaintiff Justin Hall as a class representative. (ECF No. 48.)

## B. The Parties' Settlement Agreement

To avoid the further costs and burdens of litigation, the parties have agreed to settle the claims and resolve this matter in its entirety. The proposed Settlement Class consists of the 23,465 persons[1] upon whom Defendant produced one or more

---

[1] In the preliminary approval papers, the parties estimated the size of the class at 24,943. Further analysis of the class list data determined that there were some people on the initial class list who did not have a qualifying disposition. (*See* Declaration of Jennifer Keough ("Keough Decl.") ¶ 4.) These people were removed

3

reports which included one or more records older than seven years which included a term listed in Exhibit A to the Settlement Agreement, in the disposition field from June 23, 2015 through January 27, 2019. ("Settlement Agreement" attached to the declaration of E. Michelle Drake as Ex. 1 ¶ 1.9.) (ECF No. 49-1.) As part of the Settlement Agreement, the Settlement Class Members will release all claims arising under 15 U.S.C. § 1681c of the FCRA and any analogous state law claims. (*Id.* ¶ 9.1.)

In connection with the settlement of the litigation, Defendant will create a Settlement Fund for class members consisting of $1,975,000. (*Id.* ¶¶ 1.21, 1.33.) After Court-approved deductions for attorneys' fees and costs, settlement administration costs, and a service award for the Named Plaintiffs, the entire remaining balance of the Net Settlement Amount will be allocated *pro rata* to Class Members who are entitled to receive a payment. (*Id.* ¶ 8.5.) Participating Class Members fall into two categories for payment purposes. The first category is where the face of the report itself indicates that the disposition represents a non-conviction ("referred to in the Settlement as "Class Members Entitled to Autopay"). (*Id.* ¶ 1.10.) These Class Members will be sent a check automatically without having to submit a claim form. There are 19,477 Class Members Entitled to Autopay.

The second category of Class Members is those persons whose reports require further analysis to determine whether the disposition reflected represents

---

from the notice mailing list. After removing these people, the final Class list had 24,365 unique Class Members, including 19,477 Autopay Class Members and 3,988 Non-Autopay Class Members. (*Id.*)

a non-conviction.  Thus, these individuals were required to return a claim form affirming that their consumer report contained non-conviction information older than seven years in order to receive a payment.  Of the 3,988 class members in this second category, 613 (or 15.4%), submitted claims.  (Keough Decl. ¶ 23.)  Only one class member opted out, and none objected.  (*Id.* ¶¶ 19, 21 & Ex. E.)

All Class Members who receive a check will receive the same amount, regardless of their payment category.  Between the AutoPay group and the 613 individuals submitting claims, approximately 20,090 Class Members will receive checks.  If the fees, costs and Named Plaintiff awards requested in the motion for fees are granted, each participating class member will receive approximately $60.

If any settlement checks are not negotiated by Class Members, remaining amounts will be redistributed pro-rata to Class Members who cashed their initial checks, less the administrative expense of any such redistribution.  Such redistribution will occur unless the total amount remaining for redistribution is less than $15,000.  Any amounts remaining at that time shall escheat to the state.  (Settlement Agreement ¶ 8.8.)  No portion of the Gross Settlement Amount will revert to Defendant in any circumstance.  (*Id.* ¶ 3.1.)

Defendant has also agreed to various process changes to ameliorate the occurrence of the alleged violations that are the subject of this lawsuit.  First, within six months of the Effective Date of the Settlement, Defendant shall have conducted training sessions with its employees who prepare employment-purpose consumer reports to reinforce their education regarding compliance with 15 U.S.C. § 1681c.  (*Id.* ¶ 5.1.)  Also, within six months of the Effective Date of the Settlement, Defendant shall have audited its obsolescence filters to flag dispositions that are

5

in all instances non-convictions and antedate reports by more than seven years, and, unless permitted by the FCRA, will endeavor to omit such records from future employment-purposed consumer reports. (*Id.* ¶ 5.2). Lastly, within six months of the Effective Date of the Settlement, Defendant shall have taken measures to apply its obsolescence filters to a certain category of reports called "non-channeler FBI Reconciliation Reports" to prevent the reporting of non-conviction dispositions that antedate the report by more than seven years, unless permitted by the FCRA. (*Id.* ¶ 5.3.) "Non-channeler FBI Reconciliation Reports" are reports Defendant generates when one of Defendant's clients procures a background check directly from the FBI. Defendant maintains that its reconciliation reports are not subject to the FCRA. However, through the terms of the settlement, Defendant has agreed, for purposes of this settlement only, to apply §1681c to these reports made part of this settlement as well., without any prejudice to Defendant's position that such non-channeler FBI reconciliation reports are not subject to, nor governed by, the FCRA.

### C. Class Notice and Reaction

On May 10, 2019, the court approved settlement administrator, JND Class Action Administration, mailed Notice to the 23,465 Settlement Class Members in accordance with the procedures outlined in the Settlement Agreement. (Keough Decl. ¶ 10.) Notice was also delivered by email to over 18,000 class members for whom email addresses were available. (*Id.* ¶ 9.) On the same date, JND also activated the Settlement We0site, www.BankheadSettlement.com, and a toll-free telephone line for Class Members with questions. (*Id.* ¶ 14.) On June 25, 2019, JND sent a reminder notice to the non-Autopay class members, including over 3,600

postcards and over 2000 emails. (*Id.* ¶ 13.) This reminder notice was timed and designed to ensure that the non-Autopay class members who wanted to participate in the settlement were able to do so; an effort that, based on the high claims rate in this case, appears to have been a success. Between the mail and email notices, the Administrator estimates to the net deliverability rate to be 97.4%. (*Id.* ¶ 12.)

As of July 10, 2019, there is only one opt-out, and zero objections received. (Id. ¶¶ 18-22.) Additionally, out of the 3,988 Class Members required to return a Claim Form to be considered for eligibility for payment, 613 have submitted valid claims, resulting in a claims rate of approximately 15.3.%. (Id. ¶¶ 22-23.)

The Settlement Administrator also ensured compliance with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), providing notice of the proposed settlement to the appropriate officials. (Id. ¶¶ 6-8.)

On June 21, 2019, Plaintiffs filed their Motion for Attorneys' Fees, Costs, Service Award for Class Representatives, which JND promptly posted on the Settlement Website for Class Members to access and review. There have been no objections to Plaintiff's Motion for Fees, Costs, and Service Award.

## III.    ARGUMENT

### A. Sufficient Notice Was Provided to The Class

For class action settlement notice to meet the requirements of due process and Rule 23, notice need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover*

*Bank & Trust Co.*, 339 U.S. 306, 314 (1950); see also *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985).  Here, notice was provided by mail and email where available, and class members could get more information about the settlement and submit claims online.   In addition, non-Autopay class members received a reminder notice, and class members had the opportunity to call a toll-free line for more information about the settlement.  Such a comprehensive notice program should be approved.  *Lee v. Ocwen Loan Servicing, LLC*, No. 14-CV-60649, 2015 WL 5449813, at *4 (S.D. Fla. Sept. 14, 2015).

**B.  The Settlement Should be Finally Approved**

A court may approve a settlement if the settlement "is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  *See Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. Appx. 429, 434 (11th Cir. 2012).   It is well-established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.  *See In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011), (quoting *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982)) (Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement").  "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits."  *Checking Account Overdraft*, 830 F. Supp. 2d at 1341, (quoting *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1105 (5th Cir. 1977)).  These considerations apply here.

In considering whether to approve the settlement the Court should consider the factors set forth in Fed. R. Civ. P. 23e(2).[2]  The Eleventh Circuit has also articulated the following factors for consideration: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, length and expense of further litigation; (5) opposition to the settlement; and, (6) the stage of the proceedings at the time of settlement.  *See Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011), (citing *In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1315 (11th Cir. 2009)).  These factors weigh in favor of settlement approval.

---

[2] Per the Rule, Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

There are no agreements required to be identified by Rule 23(e)(3) in this Settlement.

### 1. The Relief Provided by The Settlement is Significant

The settlement in this case is impressive when considering the range of possible recoveries for the Settlement Class, the number of procedural and merits-based hurdles between Plaintiffs and a final judgment, the significant uncertainties of a final judgment for Plaintiffs, and Defendant's intent to vigorously defend the case.

In light of these factors, the proposed settlement amount is substantial. Plaintiffs filed this case seeking statutory damages under the FCRA, which provides for between $100 and $1000 for each willful violation. 15 U.S.C. § 1681n(a)(1). The FCRA itself does not provide any guidance to courts in choosing the appropriate recovery for a statutory violation, *see* 15 U.S.C. § 1681n(a)(1), but in determining the amount of statutory damages to impose pursuant to the FCRA, courts have looked to "the importance, and hence the value, of the rights and protections" at issue in the case. *Ashby v. Farmers Ins. Co. of Oregon*, 592 F. Supp. 2d 1307, 1318 (D. Or. 2008); *In re Farmers Ins. Co., Inc., FCRA Litig.*, 741 F. Supp. 2d 1211, 1224 (W.D. Okla. 2010). The monetary recovery of approximately $60 per participating class member, is a substantial percentage of the likely award if this case had proceeded all the way through a final judgment in Plaintiffs' favor, and is an excellent recovery for the Settlement Class. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n. 2 (2d Cir. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery") *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

This settlement compares favorably with other, similar settlements involving similar claims. *See, e.g., King v. General Info. Servs.*, No. 10-cv-6850, ECF No. 124 (E.D. Pa. Nov. 4, 2014) (approving §1681c settlement that provides class members $50); *Haley v. TalentWise, Inc.*, No. 2:13-cv-01915-MJP, ECF No. 88 (final approval of settlement which pays class members approximately $50 for claims based on reporting outdated charges).

Moreover, the non-monetary relief here, which will aid Defendant in addressing allegedly improper reporting of non-convictions older than seven years, represents a substantial accomplishment. Defendant is one of the country's largest background check companies, and the process changes will help Settlement Class Members and all other consumers who are the subjects of Defendant's background checks. Given that there is a disagreement about injunctive relief being available to private plaintiffs under the FCRA, Plaintiff's successful effort to obtain this relief through the settlement this accomplishment is meaningful. *See Hamilton v. DirecTV, Inc.*, 642 F. Supp. 2d 1304, 1305 (M.D. Ala. 2009) ("District courts in the Eleventh Circuit have consistently held that equitable relief is not available to private citizens under the FCRA.")

The monetary and injunctive relief accomplished by the settlement are significant and compare favorably to other settlements involving similar claims. This factor weighs in favor of settlement approval.

### 2. Plaintiffs and the Class Would have Faced Substantial Risks in the Absence of a Settlement

There were substantial risks in litigation that could have resulted in no recovery for Plaintiffs and the Settlement Class. Plaintiffs would have had to win

a contested motion for class certification, survive summary judgment motion practice, and ultimately, prevail at trial. Each of these stages, of course, poses risk to Plaintiffs' likelihood of success.

In addition to the generalized uncertainty surrounding all litigation, Plaintiffs in this case faced the specific risk of being able to demonstrate that Defendant's alleged conduct was "willful" under the FCRA. The FCRA is not a strict liability statute. *Dalton v. Capital Associated Indus.*, 257 F.3d 409, 417 (4th Cir. 2001). A FCRA plaintiff can recover only where the defendant has acted negligently or willfully. But where the defendant's violation was only negligent, recovery is limited to actual damages. *See* 15 U.S.C. §§ 1681n(a)(1), 1681o(a)(1). To be entitled to statutory damages, Plaintiff would have had to prove not only that Defendant violated the FCRA, but that it did so willfully. Defendant has raised multiple defenses to willfulness, including that its "non-channeler FBI reconciliation reports" were not regulated by the FCRA. While Plaintiffs disagree with Defendant's statutory interpretation, Plaintiffs would have not only had to convince the Court or the jury that Defendant's interpretation of the FCRA was wrong, but also that Defendant's interpretation was so misguided that it satisfied the willfulness requirements of the FCRA. Absent such a finding statutory damages would have been unavailable.

### 3. The Stage of the Proceedings and Amount of Discovery Completed Supports Approval

This action had been vigorously investigated, litigated, and negotiated, at the time of settlement. Prior to mediation, Plaintiff researched and drafted the complaint, after extensive vetting and investigating of potential claims, and the parties exchanged considerable formal and informal discovery, as well as detailed

12

mediation submissions prior to mediating with an experienced third-party neutral. Only after attending a full day mediation, conducing additional discovery, and several weeks of further discussions and negotiations through counsel, and with additional assistance from the mediator, was an agreement reached. Consequently, the parties had a clear understanding of the claims and defenses in this action and were able to appropriately evaluate their positions prior to settlement. In other words, Class Counsel and the Class Representatives adequately represented the Class and the settlement was negotiated at arm's length. This further weighs in favor of final approval. *See In re Charles Schwab Corp. Secs. Litig.*, No. 08-1510, 2011 WL 1481424, at *5 (N.D. Cal. April 19, 2011) ("[T]he class settlements were reached … when class counsel had completed discovery and had conducted extensive motion practice and were thus well aware of the issues and attendant risks involved in going to trial as well as the adequacy of the amount of the class settlement.").

### 4. The Reaction of the Class has been Positive

Finally, the Settlement Class has reacted well to the settlement. A "low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable." *Saccoccio*, 297 F.R.D. at 694. Here, there have been **zero objections** and only one class member has opted out of the settlement.

Further, 613 Settlement Class Members returned Claim Forms, resulting in a claims rate of over 15%. This rate is higher than those in other settlements approved in this Circuit and is indicative of the strength of the settlement and the notice program. See *Perez v. Asurion Corp.*, 501 F.Supp.2d 1360, 1377 (S.D.Fla.2007) (approving 10.3 million-member settlement class when less than 119,000 –

approximately 1.1%—filed claims); *see also* *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir.2011) (en banc ) (noting evidence that claims rates in consumer class settlements "rarely" exceed 7%, "even with the most extensive notice campaigns").

### 5. The Requested Attorneys' Fees, Costs, and Class Representative Service Awards Should Be Approved

On June 21, 2019, Plaintiffs filed their Motion for Attorneys' Fees, Costs, Service Award for Class Representatives (ECF No. 52.)  As set forth in that filing, the amounts for attorneys' fees, costs, and Class Representative service awards are reasonable and in line with those approved in other settlements.   No class members have objected to these amounts.  These amounts should be approved.

## IV.  CONCLUSION

Based on the foregoing, the Court should enter the proposed final approval order attached as Exhibit 1.

Respectfully submitted this 23rd day of July, 2019.

/s/ E. Michelle Drake
E. Michelle Drake, SBN 229202
John G. Albanese (*pro hac vice*)
BERGER MONTAGUE PC
43 S.E. Main Street, Suite 505
Minneapolis, MN 55414
Tel.: 612.594.5999
Fax: 612.584.4470
Email: emdrake@bm.net
         jalbanese@bm.net

Gary B. Andrews, Jr., SBN 019375
Blake Andrews Law Firm, LLC
1831 Timothy Drive

14

Atlanta, GA 30329
Tel.: 770.828.6225
Email: blake@blakeandrewslaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

By her signature below, and as required by Local Rule 7.1.D., counsel for Plaintiff certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1.B, namely, Book Antiqua (13 point).

Dated this 23rd day of July, 2019.

/s/ E. Michelle Drake
E. Michelle Drake

1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **LATONYA T. BANKHEAD** & **JUSTIN HALL** on behalf of themselves and all others similarly situated, | ) ) ) ) |
| *Plaintiff,* | ) ) |
| v. | ) Case No. 1:17-cv-02910-LMM-CCB |
| **FIRST ADVANTAGE BACKGROUND SERVICES CORP.,** | ) ) ) ) |
| *Defendant.* | ) ) |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing document on all counsel of record by causing a copy of the same to be served via CM/ECF to:

Henry R. Chalmers
Edward P. Cadagin
ARNALL GOLDEN GREGORY LLP
henry.chalmers@agg.com
edward.cadagin@agg.com

Dated this 23rd day of July, 2019.

/s/ E. Michelle Drake
E. Michelle Drake

2